IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

DAVID T.,[1]

     Plaintiff,

      v.

COMMISSIONER SOCIAL SECURITY
ADMINISTRATION,

     Defendant.

Case No. 3:24-cv-01860-SB

**OPINION AND ORDER**

**BECKERMAN, U.S. Magistrate Judge.**

  David T. ("Plaintiff") filed this appeal challenging the Commissioner of Social Security's

("Commissioner") denial of his applications for Disability Insurance Benefits ("DIB") and

Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act. The

Court has jurisdiction over this matter pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). The only

disputed issue on appeal is whether the Court should remand for further administrative

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last
name of the non-governmental party.

proceedings or an award of benefits. For the reasons explained below, the Court reverses the Commissioner's decision and remands for the calculation and payment of benefits.

## STANDARD OF REVIEW

"As with other agency decisions, federal court review of social security determinations is limited." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014). That is because "[f]or highly fact-intensive individualized determinations like a claimant's entitlement to disability benefits, Congress places a premium upon agency expertise, and, for the sake of uniformity, it is usually better to minimize the opportunity for reviewing courts to substitute their discretion for that of the agency." *Id.* (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 621 (1966)). Adhering to this principle, courts "follow three important rules" in reviewing social security determinations. *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015).

First, courts "leave it to the [agency] to determine credibility, resolve conflicts in the testimony, and resolve ambiguities in the record." *Id.* (quoting *Treichler*, 775 F.3d at 1098). Second, courts "will 'disturb the Commissioner's decision to deny benefits only if it is not supported by substantial evidence or is based on legal error.'" *Id.* (quoting *Treichler*, 775 F.3d at 1098). Third, if the agency "'commits legal error, [courts] uphold the decision where that error is harmless,' meaning that 'it is inconsequential to the ultimate nondisability determination,' or that, despite the legal error, 'the agency's path may reasonably be discerned, even if the agency explains its decision with less than ideal clarity.'" *Id.* (quoting *Treichler*, 775 F.3d at 1098); *see also Smith v. Kijakazi*, 14 F.4th 1108, 1111 (9th Cir. 2021) ("And even where this modest [substantial evidence] burden is not met, [courts] will not reverse an [agency] decision where the error was harmless." (citing *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012), *superseded on other grounds by regulation as recognized in Farlow v. Kijakazi*, 53 F.4th 485, 487 (9th Cir. 2022))).

# BACKGROUND

## I.     PLAINTIFF'S APPLICATIONS

Plaintiff was forty-three years old on his alleged disability onset date of August 30, 2012. (Tr. 1516.) He had at least a high school education, but no past relevant work experience. (*Id*.) In his applications, Plaintiff alleged disability due to chronic back pain, degenerative disc disease, depression, anxiety, and post-traumatic stress disorder ("PTSD"). (*Id*. at 277.) The Commissioner denied Plaintiff's applications initially on June 16, 2016, and upon reconsideration on December 6, 2016. (*Id*. at 16, 169, 174, 180, 183.)

The first administrative hearing was held on December 10, 2018. (*Id*. at 34.) On February 4, 2019, an administrative law judge ("ALJ") issued a partially favorable decision, finding that Plaintiff became disabled on October 1, 2018, and his disability continued through the date of the decision, but Plaintiff was not disabled prior to October 1, 2018. (*Id*. at 12-33.) The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. (*Id*. at 1.) Plaintiff appealed (*id.* at 1179), the Commissioner conceded error and moved to remand (*id.* at 1185, 1188, 1198), and the Court remanded for further administrative proceedings on May 10, 2021. (*Id*. at 1187-1208.)

On June 30, 2021, the Appeals Council issued a conforming order, affirming disability beginning October 1, 2018, and directing the ALJ to conduct further proceedings for the earlier period. (*Id*. at 1211.) The ALJ held a supplemental hearing on November 4, 2021, and issued a new decision on November 24, 2021, finding that Plaintiff was not disabled prior to October 1, 2018. (*Id*. at 1094-1107.) On June 30, 2022, the Appeals Council affirmed. (*Id.* at 1084-90.) Plaintiff again appealed, the Commissioner again conceded error, and on July 24, 2023, the Court remanded for further administrative proceedings based on the stipulation of the parties. (*Id*. at 1582-83; *see also id.* at 1582, "On remand, the Social Security Appeals Council will direct

PAGE 3 – OPINION AND ORDER

the [ALJ] to: [(1)] Reevaluate the persuasiveness of the medical opinions, including the opinion of Winifred Ju, Ph.D. ("Dr. Ju"), and Ben Kessler, Psy.D. ("Dr. Kessler"); [(2)] Reassess Plaintiff's residual functional capacity and continue the sequential evaluation, including obtaining vocational expert ("VE") testimony and resolving any apparent conflicts between the testimony and information contained in the Dictionary of Occupational Titles [("DOT")]; and [(3)] Offer Plaintiff the opportunity for a hearing, take further action to complete the administrative record resolving the above issues, and issue a new decision.").

On January 8, 2024, the Appeals Council issued a conforming order (*id*. at 1588-92), and the ALJ held a supplemental hearing on July 2, 2024. (*Id*. at 1532.) On July 11, 2024, the ALJ issued a new decision, again finding that Plaintiff was not disabled prior to October 1, 2018. (*Id*. at 1504-17.) The Appeals Council took no further action for sixty days, and the decision became the final decision of the Commissioner on September 9, 2024. (*Id*. at 1504-05.) Plaintiff now seeks judicial review of that decision (Pl.'s Opening Br. ("Pl.'s Br."), ECF No. 9; Pl.'s Reply (ECF No. 12)), and the Commissioner again concedes error. (Def.'s Br., ECF No. 11.)

## II.     THE SEQUENTIAL PROCESS

A claimant is considered disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011). Those five steps are: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or equals a listed impairment; (4) whether the claimant can return to any past relevant work; and (5) whether the

claimant can perform other work that exists in significant numbers in the national economy. *Id.* at 724-25.

The claimant bears the burden of proof for the first four steps. *See Bustamante v. Massanari*, 262 F.3d 949, 953-54 (9th Cir. 2001). If the claimant fails to meet the burden at any of those steps, the claimant is not disabled. *See id.* at 954. The Commissioner bears the burden of proof at step five, where the Commissioner must show the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999). If the Commissioner fails to meet this burden, "the claimant is disabled." *Bustamante*, 262 F.3d at 954 (citations omitted).

## III.    THE ALJ'S DECISION

The ALJ applied the five-step sequential evaluation process to determine if Plaintiff is disabled. (Tr. 1507-17.) At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since August 30, 2012, the alleged onset date. (*Id.* at 1510.) At step two, the ALJ found that Plaintiff suffered from the following severe, medically determinable impairments: degenerative disc disease (status post fusion), depressive disorder, anxiety use disorder, and substance use disorder. (*Id.*)

At step three, the ALJ concluded that Plaintiff did not have an impairment that meets or medically equals a listed impairment. (*Id.*) The ALJ then concluded that Plaintiff had the residual functional capacity ("RFC") to perform sedentary work, subject to these limitations: he requires a cane to assist with ambulation, but can stand without the use of a cane; he can never climb ladders, ropes, or scaffolds; he can occasionally balance on uneven terrain; he can occasionally climb ramps and stairs, stoop, kneel, crouch, and crawl; he can tolerate occasional exposure to extreme cold and vibration; he can tolerate no exposure to hazards such as unprotected heights

and moving mechanical machinery; and he can understand, remember, and carry out simple tasks. (*Id*. at 1511.)

At step four, the ALJ concluded that Plaintiff had no past relevant work. (*Id*. at 1516.) At step five, the ALJ rejected the job numbers provided by the VE and determined that Plaintiff was not disabled because a significant number of jobs existed in the national economy that he could perform based on the Grid Rules (the "Grids"). (*Id*. at 1516-17.)

## DISCUSSION

The Commissioner acknowledges that the ALJ committed harmful error (Def.'s Br. at 1-8), and the only disputed issue on appeal is whether the Court should remand for further administrative proceedings or an award of benefits.

The Court first addresses Plaintiff's arguments that the ALJ erred by discounting the opinions of the state agency medical consultants and by failing to meet the Commissioner's burden at step five. The Court then addresses the Commissioner's argument that despite the ALJ's harmful error and two prior remands, the record requires further development.

## I.    MEDICAL OPINION EVIDENCE

Plaintiff argues that substantial evidence does not support the ALJ's reasons for discounting the opinions of the state agency medical consultants, Drs. Ju and Kessler. (Pl.'s Br. at 3-7.)

### A.    Applicable Law

According to the pre-March 27, 2017 framework for evaluating medical opinion evidence,[2] "[t]here are three types of medical opinions in social security cases: those from treating physicians, examining physicians, and non-examining physicians." *Valentine v. Comm'r*

---

[2] The parties agree that the Commissioner's revised rules for weighing medical opinions do not apply here. (*See* Pl.'s Br. at 4 n.2; Def.'s Br. at 6 n.2.)

*Soc. Sec. Admin.*, 574 F.3d 685, 692 (9th Cir. 2009) (citing *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995)). In the event "a treating or examining physician's opinion is contradicted by another doctor, the ALJ must determine credibility and resolve the conflict." *Id.* (quoting *Thomas v. Barnhart*, 278 F.3d 947, 956-57 (9th Cir. 2002)). "An ALJ may only reject a treating physician's contradicted opinions by providing specific and legitimate reasons that are supported by substantial evidence." *Ghanim v. Colvin*, 763 F.3d 1154, 1161 (9th Cir. 2014) (quoting *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008)).

"An ALJ can satisfy the 'substantial evidence' requirement by 'setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings.'" *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014) (quoting *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998)). Merely stating conclusions, however, is insufficient: "The ALJ must do more than state conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Id.* "[A]n ALJ errs when he rejects a medical opinion or assigns it little weight while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis for his conclusion." *Id.* at 1012-13 (citing *Nguyen v. Chater*, 100 F.3d 1462, 1464 (9th Cir. 1996)).

**B.    Analysis**

The Court concludes that the ALJ erred by discounting the state agency medical consultants' opinions.

**1.    State Agency Medical Consultant's Opinions**

Drs. Ju and Kessler evaluated Plaintiff on June 15 and December 1, 2016, respectively. (*See* Tr. 105, 124, 145, 163.) The consultants determined at the initial and reconsideration levels that Plaintiff was capable of understanding and remembering simple one-to-two step procedures

but was unable consistently to understand and remember detailed instructions or tasks on a sustained basis. (*See id*.) Dr. Ju also suggested that Plaintiff was incapable of carrying out more detailed instructions of three or more steps on a sustained basis. (*Id*. at 105, 124.)

### 2.    The ALJ's Findings

The ALJ assigned both consultants' opinions "some weight." (*Id.* at 1515.) The ALJ explained that he did not include the one-to-two step task limitation because it was "vague" and "means different things to Disability Determination Service (amounts to unskilled work) and the [VE] (does not amount to unskilled work and instead essentially results in a sheltered setting with a significant erosion of the occupational base)." (*Id*.) The ALJ also explained that the RFC "reflects policy compliant and vocationally relevant limitations" and "the [Social Security Administration ("SSA")] does not consider [General Educational Development ("GED")] ratings, which do not correspond to [the SSA]'s regulatory definitions of unskilled, semiskilled, and skilled work." (*Id*., citing SSA Emergency Message EM-21065 REV.)

### 3.    Disposition

The Court concludes that the ALJ committed harmful error by failing to include in Plaintiff's RFC the one-to-two step task limitation included in the state agency medical consultants' opinions.

Although both consultants clearly limited Plaintiff to one-to-two step tasks in their medical opinions (*id.* at 105, 124, 145, 163), the ALJ did not include the limitation in Plaintiff's RFC. (*Id.* at 1515.) The ALJ's reason for not including the limitation was that it was "vague," but the one-to-two step limitation "is common parlance of state medical examiners that fill out disability determination explanations for social security claimants." *Sally C. v. Comm'r, Soc. Sec. Admin.*, No. 6:19-cv-01263-MO, 2023 WL 6891386, at *3 (D. Or. Oct. 19, 2023) ("These opinions [limiting the claimant to one-to-two step tasks] were not vague, and the ALJ erred by

relying on this as a basis to reject them. . . . There is nothing vague . . . about a medical opinion that limits a claimant to one-and two-step tasks; this is common parlance of state medical examiners that fill out disability determination explanations for social security claimants.").

To the extent the ALJ relied on the SSA's recent emergency guidance (i.e., EM-21065 REV) to reject the recommended limitation, the Commissioner has conceded in other appeals that EM-21065 REV provided only that GED ratings do not correspond to the SSA's definitions of unskilled, semiskilled, and skilled work, but "did not state that GED reasoning levels do not correspond to the number of steps involved in a job." *Molly G. v. Bisignano*, No. 3:24-cv-1390-SMY, 2025 WL 2753598, at *5 (S.D. Ill. Sept. 29, 2025) ("As the Commissioner concedes, the since-revised emergency message cited by the ALJ (EM-21065) stated that GED ratings do not correspond to [the] SSA's regulatory definitions of unskilled, semiskilled, and skilled work; it did not state that GED reasoning levels do not correspond to the number of steps involved in a job.");[3] *cf. Boyd v. Bisignano*, No. 24-4608, 2025 WL 2992425, at *1-2 (9th Cir. Oct. 24, 2025) (remanding where the ALJ relied on (EM) 21065, "which states that the agency does not consider DOT Reasoning Levels when making vocational findings[,]" because "[Social Security Ruling ("SSR")] SSR 00-4p does not merely require congruence between DOT Reasoning Levels and limitations given by an ALJ" but "also requires that the ALJ explain and resolve conflicts between information in the DOT and 'occupational evidence provided by VEs'" (quoting SSR 00-4p, 2000 WL 1898704 (Dec. 4, 2000))).

Further, Drs. Ju and Kessler supported their recommended one- to two-step limitation with specific medical records, which neither the ALJ nor the Commissioner have disputed. (*See*

---

[3] "Indeed, Appendix C to the [DOT] defines GED Reasoning Level One as the ability to 'carry out one- or two-step instructions.'" *Molly G.*, 2025 WL 2753598, at *5 n.4 (citation omitted).

Tr. 102, 121, 142, 160; *see also* Def.'s Br. at 6-8.) The Court finds that Drs. Ju and Kessler provided concrete, tangible work restrictions supported by substantial evidence, and the ALJ erred by discounting these opinions and failing to incorporate the one-to-two step limitation in Plaintiff's RFC.

## II.    STEP FIVE FINDINGS

Plaintiff argues that the ALJ failed to meet his burden at step five to prove that Plaintiff can perform other work in the national economy. (*See* Pl.'s Br. at 8-9.) The Commissioner agrees that the ALJ erred, but argues that the Court should remand for further administrative proceedings to resolve issues with the VE's testimony. (*See* Def.'s Br. at 3-6.)

### A.    Applicable Law

The Commissioner bears the burden at step five of the sequential process to prove that Plaintiff can perform other work in the national economy, given his RFC, age, education, and work experience. *See* 20 C.F.R. § 416.912(b)(3) ("[W]e must provide evidence about the existence of work in the national economy that you can do . . . given your residual functional capacity . . . , age, education, and work experience."); *see also Silveira v. Apfel*, 204 F.3d 1257, 1261 n.14 (9th Cir. 2000) ("The Commissioner has the burden to show that the claimant can perform other work existing in the national economy, 'given his residual functional capacity, age, education, and work experience.'") (citation omitted).

There are two ways for an ALJ to meet this burden: (1) the VE's testimony, or (2) citation to the Grids. *See Osenbrock v. Apfel*, 240 F.3d 1157, 1162 (9th Cir. 2001) ("There are two ways for the Commissioner to meet his Step Five burden: (1) the testimony of a VE; or (2) by reference to the Medical–Vocational Guidelines[.]" (citing *Tackett*, 180 F.3d at 1100-01)); *see also Lounsbury v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006) ("The grids are applied at the fifth step of the analysis under 20 C.F.R. § 404.1520, and present, in table form, a short-hand

method for determining the availability and numbers of suitable jobs for a claimant." (citing *Tackett*, 180 F.3d at 1101)).

When a claimant suffers only exertional limitations, the ALJ must consult the Grids. *See Lounsburry*, 468 F.3d at 1115 ("Where a claimant suffers only exertional limitations, the ALJ must consult the grids.") (citation omitted). A non-exertional impairment, however, may limit the claimant's functional capacity in ways not contemplated by the Grids. *See Tackett*, 180 F.3d at 1101-02 ("This court has recognized that significant non-exertional impairments . . . may make reliance on the grids inappropriate."). Thus, when a claimant suffers from both exertional and non-exertional limitations, the ALJ must first determine whether the Grids mandate a finding of "disabled." *Cooper v. Sullivan*, 880 F.2d 1152, 1157 (9th Cir. 1989) ("[W]here application of the grids directs a finding of disability, that finding must be accepted by the Secretary . . . whether the impairment is exertional or results from a combination of exertional and non-exertional limitations."). If so, the claimant is disabled. *See id.*

If the Grids do not result in a disabled finding, the ALJ must then obtain VE testimony to evaluate any non-exertional limitations and determine if there are jobs in the national economy that the claimant can perform. *See Tackett*, 180 F.3d at 1102 ("Because [the claimant] suffers from non-exertional limitations not contemplated by the grids, the ALJ was required at step five to call upon a vocational expert to establish whether [the claimant] was disabled."); *see also Lounsberry*, 468 F.3d at 1116 ("In other words, where a person with exertional and non-exertional limitations is 'disabled' under the grids, there is no need to examine the effect of the non-exertional limitations. But if the same person is not disabled under the grids, the non-exertional limitations must be examined separately.").

///

### B.    Analysis

The Court finds that the ALJ's reliance on the Grids at step five without adequately

addressing Plaintiff's non-exertional limitations was harmful error because the ALJ failed to

establish by way of the Grids or VE testimony that Plaintiff could perform work available in the

national economy. As a result, the ALJ failed to meet his burden at step five.

### 1.    The VE's Testimony

The VE testified at Plaintiff's administrative hearing on July 2, 2024. (Tr. 1535-46.) The

ALJ's first hypothetical to the VE included a "younger individual, [with] a high school education

and no past relevant work who has the [RFC] to perform sedentary work," with the additional

limitation of using "a cane to assist with ambulation, [and] can stand without the use of a cane."

(*Id*. at 1536.) The ALJ added that this hypothetical person could "understand, remember, and

carry out simple tasks." (*Id*.) The ALJ asked if that individual would be able to perform any

unskilled sedentary work and to identify such jobs, to which the VE testified that there are "[n]ot

very many[.]" (*Id*.) The VE then identified some "assembly type inspection jobs, demonstrative

as a final assembler, 713.687-018, SVP 2, reasoning level 2, about 10,000 of those types of

jobs," noting that he also had "a list of sedentary unskilled jobs, it's got about [seventy-eight]

different titles, and they range from[] ten, to [twenty], to [thirty-nine], to [forty], to a maximum

of around a little over 1,000." (*Id*.)

The ALJ then asked the VE if there was something in the hypothetical that eroded the

unskilled job base, or if he "just [did] not have any unskilled sedentary jobs[.]" (*Id*. at 1536-37.)

The VE testified that "[e]xamples of jobs that are sedentary[,] are problematic to be honest with

you[,] [and are] jobs like addresser and document preparer." (*Id*. at 1537.) The VE took issue

with the job "addresser" because it no longer exists "as a stand-alone job." (*Id*. at 1539.) The VE

also explained that the job "document preparer" was problematic because there is still an "issue

PAGE 12 – OPINION AND ORDER

with having to use a cane for ambulation" as "most sedentary jobs still require a person to get up

and move around" in order to get office supplies, which means that it would be "difficult for

[someone] using a cane while they're walking" to carry "something unless it was very light." (*Id.*

at 1538.) The VE concluded that "[t]here are sedentary jobs out there but with respect to using

the DOT individually per DOT title[,] the numbers are just not there." (*Id.*)

With respect to the parking lot attendant job, which is typically considered light work but

can be considered "sedentary" because there is a "sit stand option" (*see id.* at 1537), the VE

testified that this job would still be problematic because even with sedentary lifting restrictions,

carrying objects and using a cane would be "awkward even if [the object] was light." (*Id.* at

1542.) After the ALJ included a one-to-two step task limitation to the hypothetical, the VE stated

that there "are very few jobs that have only one or two steps" and any that could qualify would

be "sheltered employment."[4] (*Id.* at 1543.)

### 2.    The ALJ's Findings

The ALJ concluded that the Grids would direct a finding of "not disabled" without

Plaintiff's additional limitation of ambulating with a cane. (*Id.* at 1516.) For that reason, the ALJ

questioned the VE about Plaintiff's cane limitation, but the ALJ did "not accept the [VE]'s

testimony that use of a cane is problematic if the individual has to use one hand to lift/carry

something awkward that did not have a handle, for instance, even within sedentary lift/carry

tolerances." (*Id.* at 1516-17.) Instead, the ALJ concluded that the VE's testimony was

inconsistent with SSR 96-9p, and that Plaintiff's cane usage did "not significantly erode the

unskilled sedentary job base under SSRs 96-9p and 85-15." (*Id.*)

---

[4] "Sheltered employment is employment provided for handicapped individuals in a
protected environment under an institutional program." SSR 83-33, 1983 WL 31255 (1983).

As a result, the ALJ rejected the VE's testimony about the impact of Plaintiff's cane and concluded that, by way of the Grids, Plaintiff was "capable of making a successful adjustment to other work that exists in significant numbers in the national economy." (*Id*.)

### 3.     Disposition

The Court concludes that the ALJ failed to meet his burden at step five of the sequential process.

### a.     Grid Rules

The ALJ consulted the Grids to conclude that Plaintiff was not disabled because Plaintiff's cane usage did not erode his occupational base. (*Id.* at 1517.) Specifically, the ALJ determined that the Grids directed a finding of "not disabled" because during the relevant period, Plaintiff was between eighteen and forty-four years old, was a high school graduate with no more than unskilled past relevant work, and was capable of the full range of sedentary work. (*Id*. at 1516-17, citing Medical Vocational Rule 201.27.) Despite acknowledging in the RFC that Plaintiff required a cane to assist with ambulation, the ALJ concluded that the "use of an assistive device do[es] not significantly erode the unskilled sedentary job base under 96-9p and 85-15" and the VE's testimony was "inconsistent with SSR 96-9p." (*Id.* at 1516-17.)

However, 96-9p provides that "if a medically required hand-held assistive device is needed only for *prolonged* ambulation, walking on uneven terrain, or ascending or descending slopes, the unskilled sedentary occupational base will not ordinarily be significantly eroded." SSR 96-9p, 1996 WL 374185, at *8 (July 2, 1996) (emphasis added). Here, Plaintiff's RFC restricted Plaintiff to the use of a cane for any ambulation, not just prolonged ambulation. (Tr. 1511.) Thus, the Court finds that the VE's testimony was not inconsistent with SSR 96-9P, and the ALJ erred by not accepting the VE's testimony that Plaintiff's cane usage eroded the number of sedentary jobs available in the national economy.

In any event, SSR 96-9P also instructs that "[i]n these situations [in which the claimant requires a hand-held assistive device], it may be especially useful to consult a vocational resource in order to make a judgment regarding the individual's ability to make an adjustment to other work." SSR 96-9P. Here, the ALJ consulted the VE to make a judgment regarding the erosion of the occupational base resulting from Plaintiff's need for a cane for ambulation, the VE provided responsive testimony, and the ALJ did not accept it. (Tr. 1516-17.) The Commissioner acknowledges that the ALJ erred by "not ask[ing] the VE to explain the conflict between his testimony and SSR 96-9p." (Def.'s Br. at 6, citing *Wageman v. Astrue*, No. 6:10-cv-01198-SI, 2011 WL 5870885, at *8 (D. Or. Nov. 22, 2011).)

In addition, for the reasons discussed above, the ALJ further erred by failing to consider the VE's testimony about Plaintiff's limitation to one-to-two step tasks, another non-exertional limitation. (*Id.* at 1516-17.) As discussed, Drs. Ju and Kessler limited Plaintiff to one-to-two step tasks because of his chronic depression with anxiety that limits his ability to perform basic tasks. (*See* Tr. 24, 139, 163.) The ALJ did not consider whether this factor would further erode Plaintiff's occupational base, which rendered the ALJ's conclusion inconsistent with the language of SSR 85-15. *See* SSR 85-15, 1985 WL 56857, at *4 (Jan. 1, 1985) ("The process must go on to consider . . . whether the person can do other work, considering his or her remaining mental capacities reflected in terms of the occupational base, age, education, and work experience.").

Here, the ALJ presented a hypothetical to the VE that included the one-to-two step task limitation. Specifically, after the ALJ discussed Plaintiff's cane use with the VE, he asked about "the simple tasks portion of the hypothetical, would it change anything if I said simple defined as one to two step tasks[?]" to which the VE answered, "[t]here are very few jobs that have only

one or two steps[.]" (Tr. 1542-43.) The ALJ then stated "[r]ight, so would you equate one to two

step tasks as basically[] sheltered employment?" to which the VE answered "[i]n almost all

environments, yes." (*Id*. at 1543.) The ALJ then asked if the one-to-two step task limitation was

vocationally relevant, to which the VE stated, "it's irrelevant to the extent that I think it

eliminates most jobs." (*Id*.) The ALJ went further and asked "[s]o, you would not see it as

synonymous with simple or unskilled?" (*Id*.) The VE answered "[n]o, unskilled jobs that take

less than [thirty] days to learn still have many more than one or two steps"; "[t]he environments

where you're just repetitively doing the same things over and over again just don't exist"; and

"[y]ou know robotics and machines do [those] kind of things." (*Id*.) The ALJ did not address this

testimony in his opinion, but the VE's testimony—supported by substantial evidence in the

record (*see* Tr. 105, 124, 416-17, 758, 1230, 1542-43)—demonstrates that Plaintiff's mental

impairments would further erode the unskilled sedentary job base.

      For these reasons, the Court concludes that the ALJ committed harmful error at step five

by failing to accept the VE's testimony regarding Plaintiff's use of a cane and limitation to one-

to-two step tasks.

### b.    Job Numbers

      Second, because the ALJ erred in relying on the Grids to conclude Plaintiff was not

disabled, the ALJ's conclusion that Plaintiff was "capable of making a successful adjustment to

other work that exists in significant numbers in the national economy" was not supported by

substantial evidence. (*Id*. at 1516-17.) Without valid VE testimony or proper Grid application,

the ALJ's finding that other work exists for Plaintiff was based on speculation, not substantial

evidence.

      Specifically, the VE testified that someone with Plaintiff's RFC could perform "some

assembly type" jobs such as final assembler, which offered ten thousand national jobs. (*Id*. at

1536.) The VE further testified that seventy-eight unskilled sedentary occupations might be available, resulting in between ten and 1,000 national jobs. (*Id*.) The VE then testified that some light occupations with a "sit stand option" might be available for someone with Plaintiff's RFC, such as a parking lot attendant with twenty-five thousand national jobs. (*Id*. at 1537.) The VE further testified that using a cane would erode the number of parking lot attendant jobs because it would be "difficult for [workers] to carry something unless it was very light." (*Id*. at 1538, *see also* Tr. 1542.) However, the VE did not specify how many parking lot attendant jobs eroded with cane use, instead noting that it is "consistent with the literature" that eighty percent of the jobs could be done at the sedentary level. (*Id*. at 1535-49.) Further, the VE did not identify any jobs in response to the ALJ's one-to-two step task limitation hypothetical, and instead indicated there were "few." (*Id*. at 1543.)

The Commissioner now concedes that the ALJ's finding of "not disabled" at step five was erroneous. (Def.'s Br. at 3-6.) As such, there is no dispute that the Commissioner failed to meet his step-five burden, and therefore Plaintiff is disabled and entitled to benefits. *See Zavalin v. Colvin*, 778 F.3d 842 (9th Cir. 2015) (noting that the Commissioner has the burden to "identify specific jobs existing in substantial numbers in the national economy that [a] claimant can perform despite [his] identified limitations") (citations omitted); *see also Smith v. Colvin*, 554 F. App'x 568, 569 (9th Cir. 2014) (remanding for an award of benefits where "the Commissioner did not meet her burden at step five of demonstrating that substantial gainful work exists in the national economy"); *Glass v. Barnhart*, 163 F. App'x 470, 473 (9th Cir. 2006) ("At step five, the burden shifts to the Commissioner to prove that there are a significant number of jobs in the national economy that the claimant can perform. If the Commissioner does not meet this burden, then the claimant is disabled and therefore entitled to disability benefits. Here, the Commissioner

did not produce evidence that [the claimant] could perform a significant number of jobs in the national economy. Thus, the Commissioner failed to meet her burden and [the claimant] therefore is entitled to disability benefits.") (citations omitted).

## III.    REMAND

The Court concludes that after three appeals in which the Commissioner has conceded harmful error each time, remanding for an award of benefits is the appropriate result here.

### A.    Applicable Law

"Generally when a court of appeals reverses an administrative determination, 'the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.'" *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted). In several cases, however, the Ninth Circuit has "stated or implied that it would be an abuse of discretion for a district court not to remand for an award of benefits when [the three-part credit-as-true standard is] met." *Garrison*, 759 F.3d at 1020 (citations omitted). The credit-as-true standard is satisfied if: "(1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." *Id.* (citations omitted). Even when the credit-as-true standard is met, the court retains the "flexibility to remand for further proceedings when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act." *Id.* at 1021.

In addition to the credit-as-true test, courts have consistently found that remanding for benefits is appropriate where the Commissioner has failed to meet his burden at step five, especially following successive remands. *See Floyd P. v. Saul*, No. 1:19-cv-03015-MKD, 2020

WL 3619518, at *11 (E.D. Wash. Mar. 23, 2020) ("The caselaw in this circuit and elsewhere does not support remanding this case to instruct the ALJ to comply with the Court's last remand order and give the Defendant a third opportunity to meet his burden." (first citing, *inter alia*, *Smith*, 554 F. App'x at 569; then citing *Glass*, 163 F. App'x at 473; and then citing *Rustamova v. Colvin*, 111 F. Supp. 3d 1156, 1163 (D. Or. 2015))); *Schluter v. O'Malley*, No. CV2300036TUCJASLCK, 2024 WL 1121574, at *5 (D. Ariz. Feb. 20, 2024) ("The Ninth Circuit has found a remand for the award of benefits appropriate for a Step Five error, under much less egregious circumstances." (citing *Smith*, 554 F. App'x at 569)), *report and recommendation adopted*, 2024 WL 1115946 (D. Ariz. Mar. 14, 2024); *Rustamova*, 111 F. Supp. 3d at 1165-66 & n.6 (collecting cases from other circuits and remanding for an award of benefits where the ALJ twice failed to carry burden at step five); *see also Sean Patrick R. v. Saul*, No. 3:18-cv-00460-AC, 2019 WL 6131435, at *4 (D. Or. Nov. 18, 2019) ("Though the credit-as-true rule does not apply when parties do not argue that certain medical or testimony evidence was improperly discredited, remand for award of benefits is still appropriate when the Commissioner has failed to carry his burden at step five of the sequential process by not identifying a significant number of jobs in the economy that a claimant could perform.") (citations omitted), *findings and recommendation adopted*, 2020 WL 806353 (D. Or. Feb. 18, 2020).

**B.    Analysis**

The Court finds that remanding for an award of benefits is appropriate because the ALJ failed to meet his burden at step five, or alternatively because the credit-as-true test is satisfied here.

With respect to the period of disability prior to October 1, 2018, the Court concludes that Plaintiff has satisfied his prima facie case by meeting his burden at steps one through four of the sequential analysis. However, for the reasons discussed above, the ALJ erred by failing to meet

his burden at step five. *See Tackett*, 180 F.3d at 1099 ("If the Commissioner cannot meet this burden, then the claimant is 'disabled' and therefore entitled to benefits."). Importantly, the ALJ failed to meet his step five burden despite three attempts, including with specific guidance from the Court and the Appeals Council following two prior remands for further administrative proceedings. *See, e.g.*, *Smith*, 554 F. App'x at 569 (remanding for benefits where "the Commissioner did not meet her burden at step five of demonstrating that substantial gainful work exists in the national economy"); *Glass*, 163 F. App'x at 473 (remanding for benefits where "the Commissioner did not produce evidence that [claimant] could perform a significant number of jobs in the national economy").

Further, Plaintiffs' applications have now been pending for nearly ten years, resulting in a record exceeding 1,800 pages and three ALJ hearings with expert testimony, three ALJ decisions, two Appeals Council reviews, and a third federal court appeal. By any measure, the record in this case has been fully developed and no additional proceedings are necessary. Plaintiff is now fifty-seven years old, has no past relevant work experience, last engaged in substantial gainful activity in 2012, and was adjudicated as disabled as of October 1, 2018. (*See* Tr. 28, 1510.)

Despite conceding harmful error for the third time, the Commissioner asks the Court to remand this case again to allow the ALJ to resolve issues with the VE's testimony. (Def.'s Br. at 3-6.) However, there is simply no utility in remanding for a third time to allow another ALJ to ask another VE the same questions.[5] That it has taken a decade to resolve Plaintiff's applications for disability benefits is an unfortunate commentary on our entire system.

_____

[5] The Court provided the same guidance in its last remand order that it would provide if it were to remand for further administrative proceedings again. (*See* Tr. 1582, "On remand, the Social Security Appeals Council will direct the [ALJ] to: [(1)] Reevaluate the persuasiveness of

Importantly here, the Ninth Circuit has clearly instructed that remanding for further proceedings under these circumstances "would create an unfair 'heads we win; tails, let's play again' system of disability benefits adjudication." *Benecke*, 379 F.3d at 595 ("The ALJ's determination that [the claimant] retains functional capacity to perform sedentary or light work was in error; because the record, including the limited [VE] testimony, clearly establishes that [the claimant] cannot perform a sedentary job or any other substantial gainful work that exists in the national economy, we need not return the case to the ALJ to make a residual functional capacity determination a second time. Allowing the Commissioner to decide the issue again would create an unfair 'heads we win; tails, let's play again' system of disability benefits adjudication."); *see also Varela v. Saul*, 827 F. App'x 713, 715 (9th Cir. 2020) ("Allowing the Commissioner to decide the issue again would create an unfair 'heads we win; tails, let's play again' system of disability benefits adjudication." (quoting *Benecke*, 379 F.3d at 595)); *Garrison*, 759 F.3d at 1021 (rejecting argument that "allowing the ALJ to have a mulligan qualifies as a remand for a 'useful purpose'"). This is a particularly egregious case where the Commissioner has conceded error by three different ALJs in three federal court appeals spanning many years.[6]

---

the medical opinions, including the opinion of [Drs. Ju and Kessler]; [(2)] Reassess Plaintiff's [RFC] and continue the sequential evaluation, including obtaining [VE] testimony and resolving any apparent conflicts between the testimony and information contained in the [DOT]; and [(3)] Offer Plaintiff the opportunity for a hearing, take further action to complete the administrative record resolving the above issues, and issue a new decision.").

[6] Indeed, the Court identified the same errors discussed herein in its first remand order dated May 10, 2021, over four years ago. (*See* Tr. 1201-02, "The Commissioner notes even though the ALJ gave 'significant weight' to the opinions of Drs. Ju and Kessler, the ALJ did not ade[q]uately account for the limitations identified by Drs. Ju and Kessler in his assessment of Plaintiff's RFC. Based on the fact that there is a dispute regarding Plaintiff's limitations and his ability to perform other work and based on the Commissioner's admission that the ALJ erred in his assessment of the opinions of Drs. Ju and Kessler, the Court concludes further administrative proceedings are necessary to allow the ALJ to reconsider the opinions of Drs. Ju and Kessler regarding Plaintiff's limitations."; *id.* at 1204, "The Commissioner concedes the ALJ erred at Step Five in his conclusions as to the occupations Plaintiff could perform based on his

Alternatively, the Court concludes that a remand for benefits is appropriate because the credit-as-true standard is satisfied here. If the improperly credited evidence regarding Plaintiff's impairments were credited as true, the ALJ would be required to find Plaintiff disabled on remand. Specifically, when the ALJ questioned the VE about Plaintiff's one-to-two step task limitation—which the ALJ improperly did not credit—the VE testified that there were "few" such jobs that would be available to Plaintiff.[7] (Tr. 1543.) Further, in light of the medical consultants' opinions and the VE's testimony, the Court has no serious doubt that Plaintiff is disabled.

For all of these reasons, the Court remands for the calculation and payment of benefits. *See, e.g., Leitz v. Kijakazi*, No. 22-35356, 2023 WL 4342114, at *3 (9th Cir. July 5, 2023) ("The Government argues that we should remand for further proceedings rather than remand for an award of benefits. However, remand would serve no legitimate purpose . . . and permitting the Government to introduce additional evidence on remand would provide the Government with an

---

limitations. For example, the Commissioner acknowledges the occupation of addressing clerk has a Reasoning Level 2 requirement, that the other occupations identified by the VE have a Reasoning Level of 3, and that none of the occupations identified by the VE accommodate a limitation to one-to-two step tasks. Moreover, the Ninth Circuit has held there is an apparent conflict between an RFC with a limitation to one-to-two step tasks and [GED] Reasoning Levels greater than one."; *id.* at 1204-05, "The Commissioner also concedes the ALJ did not clarify the conflict between the VE's testimony and the [DOT], and the ALJ did not obtain a reasonable explanation for this conflict before relying on the VE's testimony. The Court concludes on this record that the ALJ erred at Step Five, and, therefore, further administrative proceedings are necessary to permit the ALJ to address the conflicts in the VE's testimony and to reassess Plaintiff's ability to perform other work that exists in significant numbers in the national economy.").

[7] *Cf. Benecke*, 379 F.3d at 594-95 ("We now clarify that in the unusual case in which it is clear from the record that the claimant is unable to perform gainful employment in the national economy, even though the vocational expert did not address the precise work limitations established by the improperly discredited testimony, remand for an immediate award of benefits is appropriate. In this case, remanding for further administrative proceedings would serve no useful purpose and would unnecessarily extend [the claimant]'s long wait for benefits.") (citation omitted).

unfair second opportunity to present its case. . . . We therefore remand to the district court with instructions to remand to the agency for an award of benefits.") (citations omitted); *Hoffschneider v. Kijakazi*, No. 18-15504, 2022 WL 3229989, at *3 (9th Cir. Aug. 10, 2022) ("Once the improperly discredited evidence is credited as true, the vocational expert's testimony forecloses a determination that [the claimant] can work. Because no 'serious doubt' remains that [the claimant] is disabled, there is nothing left to decide. We therefore reverse and remand with instructions to remand to the Commissioner for a calculation and award of benefits.") (citations omitted); *Varela*, 827 F. App'x at 714-15 (reversing district court opinion remanding for further proceedings and instead remanding with instructions to "remand to the Commissioner of Social Security for an award of benefits" where "crediting [the treating physician's] opinion as true, there is no doubt that [the claimant] was disabled"); *Smith v. Saul*, 820 F. App'x 582, 586 (9th Cir. 2020) (reversing district court opinion affirming the denial of benefits and instead remanding "with instructions to remand to the ALJ for calculation and award of benefits" where "[t]he vocational expert concluded that an individual with [the claimant's] limitations, as described in the improperly discredited testimony . . . would be unable to perform competitive employment").

## CONCLUSION

For the reasons stated, the Court REVERSES the Commissioner's decision and REMANDS for the calculation and payment of benefits.

**IT IS SO ORDERED.**

DATED this 8th day of December, 2025.

_____
HON. STACIE F. BECKERMAN
United States Magistrate Judge